# EXHIBIT A

**SUMMONS**

## IN THE CIRCUIT COURT OF NICHOLAS COUNTY, WEST VIRGINIA

WESTERN POCAHONTAS PROPERTIES
LIMITED PARTNERSHIP,

     PLAINTIFF,

v.                          CIVIL ACTION NO. *18-C-48*

EQT GATHERING, LLC,

     DEFENDANT.

| To the above-named Defendant: | EQT GATHERING, LLC<br>c/o CT Corporation System<br>5400 D Big Tyler Road<br>Charleston, West Virginia 25313 |
| --- | --- |

     IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon COREY L. PALUMBO, attorney for the Plaintiff, whose address is BOWLES RICE LLP, Post Office Box 1386, Charleston, West Virginia 25325-1386, an Answer, including any related counterclaim you may have, to the Complaint filed against you in the above-captioned civil action, a true copy of which is herewith delivered to you. You may assert in your Answer any claim you may have against the Plaintiff which is related to the subject matter of this Complaint. You are required to serve your Answer to the Petition within twenty **(30) days** after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Petition and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Dated: 4/12/18

                                       Clerk of Court

10038248.1

IN THE CIRCUIT COURT OF NICHOLAS COUNTY, WEST VIRGINIA

CIRCUIT CLERK
NICHOLAS COUNTY, WV

2018 APR 12   A 9:58

WESTERN POCAHONTAS PROPERTIES
LIMITED PARTNERSHIP,

    PLAINTIFF,

v.                                                    CIVIL ACTION NO. 18-C-48

EQT GATHERING, LLC,

    DEFENDANT.

## COMPLAINT

    COMES NOW Plaintiff, Western Pocahontas Properties Limited Partnership ("WPP"), by counsel, for WPP's Complaint against Defendant, EQT Gathering, LLC ("EQT"), and states as follows:

### NATURE OF THE ACTION

    1.    This is an action for breach of contract, ejectment, and trespass. WPP seeks to have EQT's natural gas pipeline and compressor site station, and all property, equipment, and facilities related thereto, removed from its real property, and WPP seeks damages for EQT's trespass.

### THE PARTIES

    2.    WPP is a Delaware partnership authorized to do business in the State of West Virginia.

3. EQT is a Delaware limited liability company, authorized to do business in the State of West Virginia, and its principal place of business is 625 Liberty Avenue, Suite 1700, Pittsburgh, Pennsylvania 15222.

### JURISDICTION AND VENUE

4. Jurisdiction and venue in this action are appropriate in the Circuit Court of Nicholas County, West Virginia.

### OPERATIVE FACTS

A. **The Lease Agreement**

5. By Lease dated February 4, 1984 (the "Lease"), attached hereto as **Exhibit A**, CSX Minerals, Inc. leased unto Cities Service Oil and Gas Corporation a certain parcel of land situate in Nicholas County, West Virginia, which land is identified on the plat numbered A-149 attached to the Lease and estimated to comprise approximately 2.36 acres (the "Lease Property").

6. The Lease provides that the lessee shall use the land solely for the purpose of maintaining lessee's gas compressor site.

7. WPP is a successor in interest under the Lease to CSX Minerals, Inc., and is vested with ownership of the Lease Property.

8. EQT is a successor in interest under the Lease to Cities Services Oil and Gas Corporation.

9. Pursuant to the original terms of the Lease, the lessee must pay the lessor an annual rent $1,000.00 in advance, with the right of the lessor to periodically adjust the base rent

any time after the expiration of twelve months by giving notice of such rent adjustment to the lessee at least sixty days prior to the effective date of the adjustment.

10. WPP, EQT, and their predecessors in interest renewed the Lease multiple times, thereby extending the term of the Lease and amending the rent due thereunder.

11. WPP and EQT entered into a Lease Agreement Modification dated February 19, 2010 (the "Fifth Renewal"), attached hereto as **Exhibit B,** which amended the Lease by, among other things, (a) extending the term through December 31, 2013, and (b) changing the annual rent for the Fifth Renewal period to $2,629.00 payable in advance.

12. The Fifth Renewal period of the Lease expired on December 31, 2013, and, since that time, EQT has continued its operations and conducted activities on the Lease Property.

13. WPP and EQT have not executed any further renewals of the Lease.

14. After the Fifth Renewal period expired, EQT made payments for the years 2014 through 2017.

15. EQT did not make the annual rental payment for 2018 in advance as required by the Lease.

16. EQT did not make a rental payment for the year 2018 until January 4, 2018.

17. The Lease may be terminated by either party at any time upon at least 30 days' notice.

18. If the Lessee breaches any of the covenants, terms, and/or conditions of the Lease, the Lessor has the right to terminate the Lease immediately.

19.     Under the terms of the Lease, upon termination, the Lessee must remove all buildings or structures within any time specified in any notice of termination or at the latest within fifteen days after such termination.

20.     By letter dated January 16, 2018 the Vice President and Chief Engineer of WPP, Gregory F. Wooten, advised EQT that the Lease was terminated effective immediately.

21.     EQT has not removed its compressor station and/or property related thereto from the Lease Property and has wrongfully continued conducting its operations on the Lease Property.

B.      The License Agreement

22.     By License Agreement dated May 23, 1990 (the "License Agreement"), attached hereto as **Exhibit C**, WPP granted a license unto Ashland Exploration, Inc. to construct, lay, maintain, operate, repair, replace and remove pipeline facilities on, over, and across certain property then and now owned by WPP, situate in Grant District, Nicholas County, West Virginia, being described as a 116-acre tract of land and two 50-acre tracts of land, all being more particularly shown on the plat attached as an exhibit to the License Agreement (the "License Property").

23.     EQT is a successor in interest under the License Agreement to Ashland Corporation, Inc.

24.     Pursuant to the original terms of the License Agreement, the licensee must pay the licensor an annual rent of $769.00 payable on or before each annual anniversary date until the license is terminated or the annual rent is adjusted.

25.     The License Agreement provided for a term commencing on the date of the License Agreement and terminating December 31, 1995.

26.     The annual anniversary of the License Agreement is January 1st of each year.

27.     Under the License Agreement, provided the licensee is not in default, the licensee has the option to renew the License Agreement for successive terms of five years each, by giving licensor written notice not less than six months prior to the expiration of the original term or the existing renewal term; however, such renewal is subject to the licensee and licensor reaching agreement prior to the commencement of the renewal term as to the provisions and conditions of the renewal, including adjustments to the annual rent consideration.

28.     WPP, EQT, and EQT's predecessors in interest renewed the License Agreement multiple times, thereby extending the term of the License Agreement and amending the rent due thereunder.

29.     WPP and EQT entered into a License Agreement Modification dated November 19, 2010 (the "Fourth Renewal), attached hereto as **Exhibit D**, which amended the License Agreement by, among other things, (a) extending the term through December 31, 2015, and (b) changing the annual rent for the Fourth Renewal period to $1,658.00.

30.     The Fourth Renewal period of the License Agreement expired on December 31, 2015, and, since that time, EQT has continued its operations and conducted activities on the License Property.

31.     WPP and EQT have not executed any further renewals of the License Agreement.

32.     EQT has not made any annual rental payments under the License Agreement since on or around August 2015 when it paid for years 2015 and 2016.

33.     The License Agreement has terminated.

34.     Under the terms of the License Agreement, upon termination, Lessee must promptly remove all of its facilities and restore the License Property to its original condition.

35.     By letter dated January 16, 2018 the Vice President and Chief Engineer of WPP, Gregory F. Wooten, advised EQT that the License Agreement was terminated effective immediately.

36.     EQT has not removed its natural gas pipeline and/or property related thereto from the License Property and has wrongfully continued conducting its operations on the License Property.

## COUNT I – BREACH OF CONTRACT
### (Lease Agreement)

37.     WPP re-alleges each of the allegations set out in paragraphs 1 through 36 of this Complaint as if set out fully herein.

38.     EQT's failure to pay the annual rental payment for the year 2018 in advance constitutes a breach of the covenants, terms, and/or conditions of the Lease.

39.     As a result of EQT's breach of the terms and conditions of the Lease, WPP has been directly, proximately, and foreseeably damaged.

## COUNT II – BREACH OF CONTRACT
### (License Agreement)

40.     WPP re-alleges each of the allegations set out in paragraphs 1 through 39 of this Complaint as if set out fully herein.

41.    EQT's failure to pay annual rental payments for the years 2017 and 2018 constitutes a breach of the terms and conditions of the License Agreement.

42.    As a result of EQT's breach of the terms and conditions of the License Agreement, WPP has been directly, proximately, and foreseeably damaged.

### COUNT III – EJECTMENT
### (Lease Agreement)

43.    WPP re-alleges each of the allegations set out in paragraphs 1 through 42 of this Complaint as if set out fully herein.

44.    WPP seeks ejectment of EQT's compressor station, and all of EQT's property and/or facilities related thereto, from the Lease Property pursuant West Virginia Code § 55-4-1, *et seq.*, and requests that this Court require EQT to immediately remove the compressor station and all of EQT's property related thereto and pay for any damages caused by said removal.

45.    Ejectment of EQT's compressor station and all of EQT's property and/or facilities related thereto from the Lease Property is a proper equitable remedy because WPP will not be afforded complete relief by a monetary recovery.

### COUNT IV – EJECTMENT
### (License Agreement)

46.    WPP re-alleges each of the allegations set out in paragraphs 1 through 45 of this Complaint as if set out fully herein.

47.    WPP seeks ejectment of EQT's natural gas pipeline, and all of EQT's property and/or facilities related thereto, from the License Property pursuant West Virginia Code § 55-4-1, *et seq.*, and requests that this Court require EQT to immediately remove the natural gas pipeline and all of EQT's property related thereto and pay for any damages caused by said removal.

48.     Ejectment of EQT's natural gas pipeline and all of EQT's property and/or facilities related thereto from the License Property is a proper equitable remedy because WPP will not be afforded complete relief by a monetary recovery.

## COUNT V – TRESPASS
### (Lease Agreement)

49.     WPP re-alleges each of the allegations set out in paragraphs 1 through 48 of this Complaint as if set out fully herein.

50.     After termination of the Lease, EQT has wrongfully occupied the Lease Property by continuing to occupy and use the Lease Property for EQT's operations.

51.     EQT knew and/or knows that the Lease and all rights thereunder have terminated, but it has continued to deliberately use the Lease Property.

52.     EQT's actions have substantially and unreasonably interfered with WPP's use, enjoyment, and general possession of the Lease Property.

53.     WPP has suffered damages as a direct and proximate result of EQT's intentional intrusion and continuous trespass on the Lease Property.

## COUNT VI – TRESPASS
### (License Agreement)

54.     WPP re-alleges each of the allegations set out in paragraphs 1 through 53 of this Complaint as if set out fully herein.

55.     After termination of the License Agreement, EQT has wrongfully occupied the License Property by continuing to occupy and use the License Property for EQT's operations.

56.     EQT knew and/or knows that the License Agreement and all rights thereunder have terminated, but it has continued to deliberately and wrongfully use the License Property.

57.     EQT's actions have substantially and unreasonably interfered with WPP's use, enjoyment, and general possession of the License Property.

58.     WPP has suffered damages as a direct and proximate result of EQT's intentional intrusion and continuous trespass on the License Property.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, WPP, prays for judgment against Defendant, EQT, as follows:

(a)     An award of damages for EQT's breach of contract under the Lease Agreement;

(b)     An award of damages for EQT's breach of contract of the License Agreement;

(c)     An Ejectment Order pursuant to West Virginia Code § 55-4-1, *et seq.*, instructing Defendant to immediately (i) remove the compressor station and all of Defendant's property related thereto from the Lease Property, and (ii) remove the natural gas pipeline and all of Defendant's property related thereto from the License Property;

(d)     An award of compensatory damages to WPP related to any damage occurring to the Lease Property and/or the License Property from the Defendant's removal of its property;

(e)     An award of compensatory damages to WPP for EQT's trespass and unlawful possession of the Lease Property and the License Property;

(f)     An award to WPP of its costs for prosecution of this matter, including without limitation, WPP's attorneys' fees; and

(g)     Such other relief as this Court may deem just and proper.

WESTERN POCAHONTAS PROPERTIES
LIMITED PARTNERSHIP

BY COUNSEL

Corey L. Palumbo, Esq. (SBID# 7765)
Joshua A. Cottle, Esq. (SBID# 12529)
BOWLES RICE LLP
600 Quarrier Street (25301)
Post Office Box 1386
Charleston, West Virginia 25325-1386
Telephone:  (304) 347-1781
Facsimile:  (304) 347-1746
cpalumbo@bowlesrice.com
jcottle@bowlesrice.com

10

CSX·RESOURCES, INC.
HUNTINGTON,   WV   *Sharp McMillen*

**Real Estate and
Industrial Development
Department**

NOV 19 1984

**RECEIVED**
FILE# _____

100 North Charles Street
Baltimore, Maryland 21201

November 11, 1984   ELL/lwt

In reply refer to:
    L39918

Mr. Rick D. Stull
Landman - Land Department
Cities Service Oil & Gas Corp.
Box 300
Tulsa, OK   74102

Dear Mr. Stull:

Enclosed for the records of Cities Service Oil and Gas Corporation is an
executed counterpart of lease dated February 4, 1984 covering use of a parcel
of land containing an area of approximately 2.36 acres, located at Nicholas
County, West Virginia for maintaining your gas compressor station site.

Sincerely,

E. L. Lewis
Representative

bc:   Messrs. D. T. Morrison (File 6-9)
         R. T. Forney (File H27-01521)
             D. L. Lancaster
             E. E. Gibson

Each with a copy of the lease.   Mr. Gibson is also being furnished a
certificate of insurance.

A. E. Garey

*AEg*

EXHIBIT
A

Chessie System Railroads Form V-14
Rev. 7-82 Made USA

2-COG-1294-A

## LEASE

**PARTIES**

THIS LEASE, made this 4th ____ day of February ____, 1984 , between

CSX MINERALS, INC.

whose address is 100 North Charles Street, Baltimore, Maryland 21201, Lessor, and

CITIES SERVICE OIL AND GAS CORPORATION

whose address is Box 300, Tulsa, Oklahoma 74102

Lessee:

**PREMISES**

WITNESSETH: That in consideration of covenants herein specified and the rental to be

paid by Lessee, Lessor does hereby lease unto Lessee certain vacant land and/or unimproved

lands located at Nicholas County, West Virginia ____, hereinafter called "the premises,"

as shown on plan numbered A-149 ____, dated July 27, 1954

attached hereto and hereby made a part hereof, described as follows:

**DESCRIPTION**

Being a parcel of land containing an area of approximately 2.36 acres, as outlined in
green on said plan.

It is agreed between the parties hereto:

**USE**

1. Lessee shall use and occupy the premises solely for the purpose of maintaining
Lessee's gas compressor station site
and for no other purpose.

**RENT**

2. Lessee shall pay to Lessor as base rental for the premises the sum of ____

ONE THOUSAND————————————————————————————————————————————— DOLLARS

($1,000.00 ____) per annum ____ payable annually ____ in advance from
the date hereof. Lessee shall reimburse Lessor, as additional rental, all real estate
taxes levied against the premises and special assessments,

and all costs of or charges for water,
sewage, electricity, heat and other utilities furnished to the premises and paid by Lessor,
within thirty (30) days after presentation to Lessee of bills therefor. The payment by Lessee
of any sum(s) in advance shall not create an irrevocable lease for the period for which the
same is/are paid. Lessor reserves the right to periodically adjust the base rent herein any

Chessie System Railroads Form V-14
Rev. 7-82 Made in USA

time after the expiration of twelve (12) months, by giving notice of such adjustment to Lessee at least sixty (60) days prior to the effective date of such adjustment. Adjusted rent shall be not less than the immediately previous base rent. Continued occupation of Lessee after such effective date shall be at such adjusted base rental. Periodic rent may be similarly adjusted thereafter.

**APPROVAL OF PLANS, TRACK CLEARANCE**

3. Lessee, prior to erecting any structure on the premises, shall submit plans to, and secure approval in writing of, Lessor. Lessee shall not erect or place or allow to be erected or placed on the premises any buildings, structures, fixtures or obstructions of any kind, either temporary or permanent, within eighteen (18) feet of the centerline of nearest track over which Lessor operates, unless a lesser clearance is provided for on said attached plan or the written consent of Lessor shall hereafter be obtained; provided nothing in the foregoing shall be construed to permit any clearance less than the minimum required by any applicable law or regulation.

**FIRE PREVENTION**

4. Lessee shall cooperate with the Casualty Prevention Department of Lessor and shall promptly comply with fire prevention measures requested by said Department. Lessee shall make no electrical installations or alterations in and to the improvements or electrical circuits (whether for power, light, heat or other purposes) located on the premises except by a duly licensed electrician, and shall make no installation of natural gas, propane, kerosene or other combustion fuel heating or cooling units, except by licensed heating or cooling contractor; and no such alterations or installations shall be made without prior written approval of Lessor's Casualty Prevention Department.

**ORDINANCES, REGULATIONS, ETC.**

5. (a) Lessee, at Lessee's sole cost and expense, shall comply with all applicable ordinances, rules, regulations, requirements and laws of any Governmental authority having jurisdiction over the premises or Lessee's intended use thereof, including but not limited to zoning, health, safety, building or environmental matters. Lessee shall supply Lessor with copies of letters or certificates of approval of Lessee's use.

(b) Lessee shall further defend, indemnify and hold Lessor harmless from any violation thereof, any penalty, levy, fine or assessments therefrom, and all costs of defense of or compliance with any citation, order or violation notice(s), including any such penalties, levies, fines, assessments, compliance or remedial charge(s) arising after termination of this Lease.

**MAINTENANCE, REPAIRS AND COSTS**

6. (a) Lessee will not create or permit any nuisance in, on or about the premises, and Lessee shall maintain the premises in a neat and clean condition. Buildings and other structures of Lessee shall be erected and/or maintained on the premises by Lessee to the satisfaction of Lessor.

(b) Lessee will not make, or permit to be made, any improvements or alterations to the premises without the written consent of Lessor. Approval by Lessor of any improvements or installations made by Lessee, or failure of Lessor to object to any work done or material used, or the method of construction or installation, shall not be construed as an admission of responsibility by Lessor or as a waiver of any of Lessee's obligations under this Lease.

(c) All work performed by Lessee, or Lessee's contractor(s), pursuant to Section 6, shall be subject to the written approval of Lessor's Chief Engineer or his duly authorized representative.

**SERVICES, UTILITIES**

7. Lessor will be under no obligation to furnish the premises with water, gas, sewage, electricity, heat, or other services and supplies that may be necessary or desirable in connection with Lessee's use and occupancy of the premises.

-2-

Chessie System Railroads Form V-14
Rev. 7-82 Made in USA

**ADJACENT AREAS**

8. Except as provided in Section 9 hereafter, Lessee shall not use, for utility lines or otherwise, any property of Lessor other than the premises herein leased without first obtaining Lessor's prior written consent and complying with all requirements of Lessor applicable thereto.

**INGRESS AND EGRESS**

9. Lessee shall have the right to use, in common with Lessor and others authorized by Lessor, existing driveway(s) or other property designated by Lessor as means of ingress to and egress from the premises. Lessor shall be under no obligation with respect to the condition or maintenance of said driveway(s) or other property, and Lessee's use of same shall be subject to all of the covenants, terms and conditions of this Lease.

**PIPE AND WIRE LINES**

10. Lessor shall at all times have the right to maintain and/or construct, and to permit others to maintain and/or construct, overhead and/or underground pipe and/or wire lines,now or a hereafter installed upon or across the premises, and to use, repair, renew and remove the same.

**CLAIM OF TITLE**

11. (a) Lessee shall not at any time own or claim any right, title or interest in or to the premises, nor shall the exercise of this Lease for any length of time give rise to any right, title or interest in or to the premises, other than the leasehold herein created.

**MECHANIC'S LIENS**

(b) Lessee shall pay all debts incurred to, and shall satisfy all liens of contractors, subcontractors, mechanics, laborers and materialmen in respect to any construction, alteration and/or repair in and to the demised premises, and any improvements thereon, and shall indemnify, defend and hold Lessor harmless against all legal costs and charges, including counsel fees reasonably incurred, in any suit involving any lien, the enforcement thereof, or encumbrance caused by the same, with respect to the premises or any part thereof. Further, Lessee shall have no authority to create any liens for labor or material on or against Lessor's interest in the premises, and shall specify in all contracts let by Lessee for any construction, erection, installation, alteration, maintenance or repair of any building or other improvement on the premises.

**TERMINATION, NOTICES, REMOVAL COSTS**

12. (a) This Lease may be terminated by either party at any time upon not less than thirty (30) days' notice in writing sent by registered or certified mail to the other party. However, in the event of a breach of any of the covenants, terms and conditions hereof by Lessee, Lessor shall have the right to terminate this Lease immediately.

(b) All notices and communications concerning this Lease shall be addressed to Lessor or to Lessee at their respective addresses hereinabove set forth, or at such other address as either party may designate in writing to the other party.

(c) Upon termination of this Lease, by expiration of term or any other reason, Lessee shall remove all buildings or structures (except tracks, rail facilities and other designated property of Lessor), within the time specified in any notice of termination or at the latest within fifteen (15) days after such termination. In effecting such removal, the premises shall be restored by Lessee to a condition satisfactory to Lessor, including the removal of all structures and facilities (whether on the surface or underground) to ground level, and the filling of all excavations and holes, which shall be tamped, compacted and graded uniformly. If Lessee shall fail to make the removal in the manner and time set forth herein, after notice to do so, Lessor may remove said buildings, structures, and/or facilities and make said restoration, all at the sole risk, cost and expense of Lessee, and may also dispose of any removed items without necessity to account for the same or to give further notice to Lessee.

(d) If Lessee shall fail to make removal of any such property, Lessor shall have the further option to elect and notify Lessee that all right, title and interest of Lessee in certain building(s), structure(s) and/or facility(ies), shall be forfeited and shall vest absolutely in Lessor as of the date of notice of such election.

(e) In the event that Lessee prepays monthly or annual rentals in advance, and this Lease is terminated by notice of either party (other than for breach or cause), Lessor shall refund to Lessee the proration of any prepaid base rental and taxes paid in advance, which Lessee shall accept in full settlement, satisfaction and discharge of the remainder of the term or period; PROVIDED, however, Lessee shall not be entitled to such refund when the cumulative total involved is less than One Hundred Dollars ($100.00).

**LIABILITY, INDEMNITY**

13.  (a) Lessee hereby assumes, and releases and waives any right to ask for or demand damages for or on account of, any loss of or damage to property of Lessee or any part thereof, including loss of or interference with any use or service thereof, on or about the premises and upon any access driveway provided under Section 9., whether caused by, arising out of or resulting in any manner from the fault, failure or negligence of Lessor or otherwise.

(b) Lessee hereby assumes, and releases and agrees to protect, save harmless, defend and indemnify Lessor from and against:

(1) all loss of and damage to any property whatsoever, other than said property of Lessee, but including property of Lessor and of all other persons whomsoever, and the loss of or interference with any use or service thereof;

(2) all loss and damage on account of injury to or death of any person whomsoever, including, but not limited to employees and patrons of the parties hereto and all other persons whomsoever; and

(3) all claims and liability for such loss and damage and cost and expenses thereof;
caused by, arising out of or resulting in any manner from the condition, existence, use or occupancy of the premises and adjoining lands of Lessor whether caused by, arising out of or resulting from the fault, failure or negligence of Lessor or otherwise.

**LESSOR**

14.  The term "Lessor" as used in Section 13. hereof, shall include any other company or companies whose property at the aforesaid location may be leased or operated by Lessor.  Said term also shall include any parent company(ies), subsidiary(ies) or affiliate(s) of Lessor, and the servants, agents or employees of said parent company(ies), subsidiary(ies) or affiliate(s) of Lessor, and shall also include tenants, lessees or licensees of Lessor other than the Lessee herein referred to.

**INSURANCE, LIABILITY AND CONTRACT**

15.  (a) Prior to commencement of occupation or use of the premises for activities provided herein, Lessee, at its sole cost and expense, shall procure, and shall maintain during continuance of this Lease, Public Liability Insurance covering liability assumed by Lessee under this Lease, with a Combined Single Limit of not less than TWO MILLION DOLLARS ($2,000,000.00) for personal injury and property damage per occurrence.  Lessee shall furnish Lessor's Director-Insurance at 100 North Charles Street, Baltimore, Maryland 21201, a certificate of Insurance referring to this Lease by date, name of Lessor, description of lease and location covered.  The certificate shall be endorsed to provide for thirty (30) days' notice to said Director-Insurance prior to termination of or change in the coverage provided. If a higher limit of liability is required by Lessor, Lessor shall provide Lessee written notice of the limit required, and within thirty (30) days thereafter, Lessee shall provide revised certificate of Insurance for the increased required limit.  Furnishing of this Insurance by Lessee shall not limit Lessee's liability under this Lease, but shall be additional security therefor.

Chessie System Railroads Form V-14
Rev. 7-82 Made in USA

(b) If Lessee contracts for new construction or structural alterations to the premises, Lessee shall provide or shall cause its contractor to provide, at no cost to Lessor, Protective Liability Insurance designating Lessor as named insured, with a limit of not less than TWO MILLION DOLLARS ($2,000,000.00) per occurrence subject to a SIX MILLION DOLLAR ($6,000,000.00) aggregate limit, for all bodily injury and property damage occurrences during each annual policy period. If the construction or alterations involve an exposure to train operations on tracks of Lessor, the protective liability insurance shall be on the AAR-AASHTO Form of Railroad Protective Insurance. The original protective liability policy shall be submitted to and approved by Lessor's Director-Insurance, 100 North Charles Street, Baltimore, Maryland 21201, prior to commencement of the construction or alterations. Said address shall be the named insured's address for the purpose of all notices from the insurer.

CONDEMNATION

16. Should the premises or any part thereof be condemned, appropriated and/or acquired for public use, then this Lease, at the option of Lessor, shall terminate upon the date when the premises or part thereof shall be taken. No part of any damages or award shall belong to Lessee, except to the extent of any specific award from the governmental authority for improvements and/or facilities of Lessee. Lessor's land shall be valued as of such date (or other legal date of valuation) as vacant land, without consideration of this Lease or Lessee's improvements on said land as an enhancement or detriment to said land value. Improvements and/or facilities of Lessee not so condemned, appropriated and/or acquired shall be removed in accordance with Section 12, hereof.

SUCCESSORS AND ASSIGNS

17. (a) The terms, covenants and provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of Lessor and the successors and assigns of Lessee.

NO TRANSFER, SUBLEASE OR ASSIGNMENT

(b) However, Lessee shall not transfer, assign, encumber or sublet this Lease or any part of the premises or any rights and privileges herein granted except to a subsidiary, parent or common controlled affiliate. This covenant shall also apply whether such sale or transfer is made voluntarily by Lessee or involuntarily in any proceeding at law or in equity to which Lessee may be a party whereby any of the rights, duties and obligations of Lessee shall be sold, transferred, conveyed, encumbered, abrogated or in any manner altered, without the prior notice to and consent of Lessor. In the event of any such unauthorized sale, transfer, assignment, sublease or encumbrance of this Lease, or any of the rights and privileges hereunder, Lessor, at its option, may immediately terminate this Lease by giving Lessee or any such assignee written notice of such termination, and Lessor may thereupon enter and retake possession of the premises.

BANKRUPTCY RIGHTS

(c) It is expressly understood and agreed that in the event of any assignment for the benefit of creditors, or in the event a petition in bankruptcy shall be filed by Lessee, or if Lessee shall be adjudged bankrupt or insolvent by any court, or if a trustee in bankruptcy or a receiver of Lessee or Lessee's property shall be appointed in any suit or proceeding brought by or against Lessee, and if at such time this Lease is in default by Lessee, then and in such event Lessor, at its option, may (i) terminate this Lease at the end of the following month by notice, or (ii) may request affirmance or rejection of this Lease under Sec. 365 of the Bankruptcy Act by giving Lessee or any such assignee, trustee, or receiver written notice of such termination or demand for election. If Lessee, or such assignee, trustee or receiver, fails to elect affirmance and fails to furnish adequate assurances of correction of existing debt and continued performance under the Lease, Lessor may apply to the appropriate court for an order compelling removal of Lessee. If Lessee or such assignee, trustee or receiver shall reject this Lease, it shall vacate the premises as in Section 12, above. If Lessee or such assignee, trustee or receiver shall affirm this Lease, it shall thereupon be bound by all terms hereof, including payment of all rentals from the date of Lessor's notice of demand for election and remedies of Lessor for nonpayment or other breach as hereinabove (including the provisions of this Section 17, (a) and (b)).

Chessie System Railroads Form V-14
Rev. 7-82 Made in USA

**SEVERABILITY**

18. It is understood and agreed that this Lease is executed by all parties under current interpretation of any and all applicable Federal, State, County, Municipal, or other local statute, ordinance, or law. Further, it is understood and agreed that each and every separate division (paragraph, clause, item, term, condition, covenant or agreement) herein contained shall have independent and severable status from each other separate division, or combination thereof, for the determination of legality, so that if any separate division herein is determined to be unconstitutional, illegal, violative of trade or commerce, in contravention of public policy, void, voidable, invalid or unenforceable for any reason, that separate division shall be treated as a nullity, but such holding or determination shall have no effect upon the validity or enforceability of each and every other separate division herein contained, or any other combination thereof.

**TITLE TO STRUCTURES**

19. In consideration of the sum of One Dollar ($1.00) and other valuable consideration, receipt of which is hereby acknowledged, Lessor hereby transfers, sells and assigns to Lessee all right, title and interest in and to any and all buildings and structures (except tracks, other track materials and rail facilities) located on the premises as of date of this Lease. Lessee covenants and agrees to remove said buildings and/or structures, at its sole risk and expense, upon termination in a manner subject to approval and satisfaction of Lessor's Chief Engineer or his duly authorized representative, as in Section 12. above.

**BREACH, WAIVER**

20. If under the provisions hereof Lessor shall institute proceedings, and a compromise or settlement thereof shall be made, the same shall not constitute a permanent or general waiver of any covenant herein contained nor of any of Lessor's rights hereunder. No waiver by Landlord of any breach of any covenant, condition or agreement herein contained shall operate as a permanent waiver of such covenant, condition, or agreement itself, or of any subsequent breach thereof. No payment by Lessee or receipt by Lessor of a lesser amount than the monthly installments of rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent. Nor shall any endorsement or statement on any check or letter accompanying a check for payment of rent be deemed an accord and satisfaction, and Lessor may accept such check or payment without prejudice to Lessor's right to recover the balance of such rent or to pursue any other remedy provided in this Lease. No re-entry by Lessor after a breach shall be considered an acceptance of a surrender of the Lease.

**OTHER PROVISIONS**

21. This lease shall run for a period of five (5) years from the date hereof; and unless sooner terminated as provided herein, Lessee may, at its option, extend this Lease for three (3) additional periods of five (5) years upon giving to Lessor notice in writing of its intention so to do, sent at least ninety (90) days prior to expiration of the initial five (5) year term; provided, however, that if this lease is so extended, Lessor shall have the right to adjust rental to be paid by Lessee during said three (3) additional five-year periods. In the event the option for the first, second, or third five-year extension is exercised, either party shall, during the term of said first, second, or third five-year extension, have the right to terminate this Lease at any time upon not less than ninety (90) days notice in writing sent by Registered or Certified Mail to the other party.

22. Lessee understands and agrees that if, at any time during the term of this Lease, its oil well resources are exhausted and Lessee's operations cease, then this Lease shall automatically cease and terminate.

**LEASE SUCCESSION**

23. This Lease replaces a prior Lease dated February 4, 1984, as amended, and all prior Leases between the parties hereto, or their predecessors, concerning the same land; it being intended, however, that nothing herein shall constitute a termination of property interests under such Lease(s) or causing removal thereunder. Nor shall this Lease act as waiver of liability defenses or claims for acts or omissions of the parties hereto under said prior Lease(s) occurring prior to the date of this Lease.

IN WITNESS WHEREOF, the parties hereto have caused this Lease to be executed, in duplicate, as of the day and year first above written.

CSX MINERALS, INC.

_P. M. Siftos_ By _H. B. Lewis_
Assistant Secretary          President

CITIES SERVICE OIL AND GAS CORPORATION

ATTEST:
_Linda Frisk_ By _Dean Athens_
(title)                              (title)   Dean Athens,          Lessee
Assistant Secretary                        Attorney-In-Fact

-7-

STATE OF OKLAHOMA )
                  ) SS
COUNTY OF TULSA   )

    The foregoing instrument was acknowledged before me this 15th day of

August, 1984, by Dean Athens, as Attorney-in-Fact on behalf of Cities Service

Oil and Gas Corporation.

My commission expires:

    January 28, 1987

*Rhonda P. Maness*
Rhonda P. Maness      Notary Public


This instrument was prepared by:

*E. L. Lewis*
E. L. Lewis
Chessie System Railroads, Agent for Lessor
100 North Charles Street
Baltimore, Maryland 21201





# Western Pocahontas Properties

*Limited Partnership*

5260 Irwin Road
Huntington, WV 25705-3247
304-522-5757 • Fax 304-522-5401; 304-302-2370

February 19, 2010
File: 14-9

Mr. Cecil Ray
EQT GATHERING, LLC
1710 Pennsylvania Avenue
Charleston, WV 25302

RE:   Fifth Renewal - Lease No. SML-005-UE, EPC # 804117.00, dated February 4, 1984, between CSX Minerals, Inc. (now Western Pocahontas Properties Limited Partnership), "Lessor", and City Services Oil and Gas Corporation (now EQT Gathering, LLC), Lessee, on the Sharp-McMillen lands, Nicholas County, WV

Dear Mr. Ray:

Reference is made to the Lease Agreement SML-005-UE, dated February 4, 1984, covering a compressor site on Jerry Fork, Nicholas County, West Virginia, with letter Modification, Dated September 5, 1990, changing the due date of the annual rental to January 1, and the necessity of extending this Lease for an additional five (5) year term.

Owner hereby submits this Lease Agreement Modification to extend the term for an additional five-year period through December 31, 2013, subject to your acceptance of the following provisions and conditions.

1.   Effective January 1, 2010, the annual rental for the renewal period will increase to $2,629.00.   Annual rental is to be made payable to Western Pocahontas Properties Limited Partnership, and mailed to P.O. Box 8500-55333, Philadelphia, PA 19178-5333.

2.   Lessee shall also pay all personal property taxes assessed against any leasehold interest of Lessee, in any fixtures, furnishings, equipment, stock-in-trade, or other personal property of any kind owned, installed or used in or on the Premises.

3.   Except as modified herein, all terms, conditions and provisions of the February 4, 1984 Lease Agreement and all subsequent agreement modifications shall remain in full force and effect.



EXHIBIT
B

Mr. Cecil Ray
Page 2
February 19, 2010

This Lease Agreement Modification is provided in duplicate. Kindly sign below in the space provided for Licensee's signatory acceptance. You may then return one counterpart to Lessor with a check for $2,629.00 as consideration for the 2010 rental period.

Sincerely,

*Joseph R. Newlon*

Joseph R. Newlon
Manager, Forestry Resources

LICENSOR: WESTERN POCAHONTAS PROPERTIES
LIMITED PARTNERSHIP

By *Joseph R. Newlon* 2/19/10
Its Manager, Forestry Resources - Date

LICENSEE: EQT GATHERING, LLC

By _____ 3/1/10
Its VICE PRESIDENT - Date

JRN/mt

 **GATHERING, LLC**

Tiffany M. Arbaugh, Esq. - RPL
1710 Pennsylvania Avenue
Charleston, West Virginia 25302
Telephone: (304)348-3852
Cell: (304) 552-3051
Fax: (304) 343-7133

March 5, 2010

Western Pocahontas Properties, LP
Attn: Mr. Joseph R. Newlon
5260 Irwin Road
Huntington, WV 25705-3247

RE:   Fifth Renewal – Lease No. SML-005-UE, EPC # 804117.00, dated February
      4, 1984, between CSX Minerals, Inc. ( now Western Pocahontas Properties
      Limited Partnership), "Lessor", and City Service Oil and Gas Corporation
      (now EQT Gathering, LLC), "Lessee", on the Sharp-McMillen Lands,
      Nicolas County, WV

Dear Mr. Newlon,

      Enclosed please find a duly executed Lease Agreement Modification dated
February 19, 2010. You will also find enclosed a check in the amount of $2,629.00 as the
consideration for the 2010 rental period.

      I appreciate your involvement with this and look forward to working with you in
the future. Please do not hesitate to contact me should you have and questions or
concerns.

Sincerely,

Tiffany M. Arbaugh, Esq. – RPL
Sr. Landman

Enclosures

